OPINION GRANTING CLARIFICATION

In the interests of finality and clarity, the following is entered by this Court addressing once again the prolonged litigation to enforce a writ of mandamus filed by Petitioners Dale Tsosie and Hank Whitet-home against the Navajo Board of Election Supervisors (Board) and the Navajo Election Administration (NEA).
Based upon the review of the recent motions filed with the Court, as well as other statements made by both the Legislative and Executive Branches of government, it is disturbingly apparent that any order issued by this Court inconsistent with the political motives of Legislative Counsel and the Office of the President will be met with further opposition and political maneuvering to circumvent the Court’s order requiring the special election fof President of the Navajo Nation to proceed with Candidates Joe Shirley Jr. and Russell Begaye. The government is therefore at a stalemate and the Court will issue this final order only to address the most recent motions filed with the Court.
The Court grants the motion of Julius Elwood to appear as Amicus Curiae and the Court accepts his brief.
I.
On March 20, 2015, we issued an enforcement order
Despite the political maneuvering by [the Navajo Nation] Council to continue to change the election laws and to delay the 2014 Presidential election, the Navajo Nation has a governmental duty to conduct a presidential election every four years in accordance with existing Navajo Election laws. The Navajo People are entitled, as a matter of basic right/freedom of the Navajo People, to an election at the expense of their government and with the use of their public funds. The public treasury belongs to the Navajo People and the Navajo People have a right to have their money used to fund the election without further delay. We repeat with emphasis that the Council cannot impede or otherwise obstruct this obligation so they can unilaterally change the election laws in the midst of an ongoing election. This Court, one component of the government, has the obligation to enforce governmental duties of governmental officials to compel compliance with Navajo law. We find it necessary to take more direct action.
Order (Nav. Sup. Ct. March 20, 2015) (internal citation omitted).
We therefore ordered the Navajo Election Administration to use its available operating funds to implement the special election as scheduled for April 21, 2015. *300 We further ordered the Acting Controller of the Navajo Nation to immediately identify and transfer $317,000 to the Navajo Election Administration to supplement and/or replenish its operating line items for the purpose of ensuring the Navajo Nation governmental duty is carried out. On March 27, 2015, the Attorney General on behalf of the Acting Controller filed a Notice of Compliance and Motion for Clarification. The Attorney General informs the Court that funds were identified that could be transferred to supplement and replenish the Navajo Election Administration’s operating line items but the Acting Controller is not empowered to unilaterally transfer the identified line items without the concurrence of the relevant oversight legislative committee or the Navajo Nation Council under the Appropriations Act. The Attorney General therefore seeks this Court’s clarification on how to proceed to fund the election consistent with the laws of the Navajo Nation.
Under the circumstances of this litigation, the Court grants the motion for clarification, however, the Attorney General in his motion was not entirely forthright about other available funding and other laws. Neither was the hold-over President who filed a motion to intervene stating the only funds are those appropriated by the Council. Underlying both requests are objections to the Court’s decision requiring the NEA to move forward with the April 21, 2015 special election. The Court is dismayed but not surprised by the lack of candor considering this is a case fraught with political self-interests. The motion filed by a private citizen was the only pleading candid about the contingency fund that we considered when we ordered the Controller to transfer funds.
As the Court of last resort, it is our essential function to declare and enforce the law. We have tried to honor this obligation with the highest regard to The Navajo Nation—our Diñé bi naat’á. We rendered a final decision that reverently upholds the sovereign, statutory laws of the Navajo Nation that requires the President of the Navajo Nation to fluently speak the sacred language of the Dine. Being a Nation of laws, it was and remains important for the future of the Navajo people that its government continue to be viewed as a Nation that honors its own laws free from the influence of politics. We expected (perhaps unrealistically) other branches of government to abide by their obligations to maintain the rule of law and act to meet their fiduciary responsibilities, but unfortunately we are forced to revisit the enforcement of laws through these latest filings.
Elections are mandated by the laws of the Navajo Nation under “The Navajo Election Code,” which is found at Title 11 of the Navajo Nation Code. Relevant sections mandate general elections for the President of the Navajo Nation to take place every four years. 11 N.N.C. § 3(A). An election can be postponed for a maximum of 60 days “for the purpose of printing new ballots required because of changed circumstances.” 11 N.N.C. § 3(E). For this enumerated purpose, this Court authorized an extension beyond the mandated 60 days. Unfortunately, for purely political reasons, there are these new filings to indefinitely delay the special election by creating obstacles to funding. Nonetheless, the Election Code itself does not permit postponements under the circumstances of recent events.
This Court has the authority to compel any officer, employee or agent of the Navajo Nation to perform his/her responsibilities under the expressly applicable laws of the Navajo Nation. 1 N.N.C. § 554(G). Sovereign immunity has posed no barrier to enforcement where, as here, *301 officials of the Navajo Nation have been held in violation of Navajo law by virtue of not complying with the Elections Code. The presumption is in favor of the validity of the Election Code and it is the duty of all officers, employees or agents of the Navajo Nation to obey it. Despite Speaker Lorenzo Bates’s and the hold-over President Ben Shelly’s public opposition to this Court’s enforcement of the Election Code, Joint Statement Regarding Supreme Court Ruling, Elwood’s Amicus Brief, Ex. A, the Election Code and its implementation cannot be thwarted by the politics of these officials.
Under the Election Code, election officials have all powers necessary and proper to carry out the purposes set forth in the Election Code and empowered “[t]o develop and submit separate annual budget for the Board and the Election Administration to include devising and managing a revolving account utilizing filing, penalty and resignation fees for special election costs in addition to the annual appropriation for this category.... ” 2 N.N.C. § 873(B)(10); 11 N.N.C. § 321(A)(10) (same). Our electoral process is funded by public funds. Because it relies on public funding, the Election Code itself—as a matter of law—mandates the expenditure of funds necessary to the operation of the Election Code. We therefore hold sufficient funds are to be appropriated as a matter of law because The Navajo Nation is legally obligated to expend funds to carry into effect the Election Code.
II.
The NEA under the direction of the Director is working diligently to ensure the special election will be held on April 21, 2015 through the use of its depleting operating funds. Unless the special election is fully funded, every Navajo voter will be deprived of the right to implementation of the Election Code and the right to elect a qualified candidate of their choice. The legitimacy of every possible vote is compromised by the non-funding. The potential violation of civil liberties justifies exceptional relief as follows.
Under the Contingency Management Fund (CMF) plan, as approved by the Council, payment from CMF is authorized to “respond to any court order ... arising from lawsuits against the Navajo Nation.” Comprehensive Fund Management Plan for the Contingency Management Fund Established by Resolution CS-71^-97, Section V(A) (emphasis added). The Controller is authorized to make payments from the CMF to address the contingent liabilities of the Navajo Nation, upon the written advice of the Attorney General that “the Navajo Nation is legally obligated to expend funds to satisfy judgments or settle claims brought against the Navajo Nation.” Comprehensive Fund Management Plan for the Contingency Management Fund Established, by Resolution CS-74-97, Section V (adopted by Res. CD-105-99 on December 1999). This Court entered a judgment that the Navajo Nation is legally obligated to expend funds to carry into effect the Election Code, as a matter of law. We deem this judgment is of the type that can be funded by the contingency fund. As an officer of the Court, the Attorney General is obligated to carry out his duties to advise the Acting Controller in accordance with this legal determination. As officers of the Court, the Attorney General and lawyers from the Department of Justice are expected to issue the advice forthwith, knowing that the special election will be conducted on April 21, 2015.
The Council’s motion to reconsider is denied at this late stage of litigation after the matter has been adjudicated and at the enforcement stage.
*302 The President’s motion to intervene is denied. The weight of the President’s argument for his motion is undercut by the fact that he holds his office temporarily until the special election. As a caretaker, t’66 hok’ee jizdá. Yet he now wishes to fully participate in this litigation so as to delay the special election. A caretaker should not advocate to extend his term of office.